UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------- x
UNITED STATES OF AMERICA,

    -against-

REDINEL DERVISHAJ and DENIS
NIKOLLA,

                    Defendants.
---------------------------------------------- x

MEMORANDUM & OPINION

13-CR-0668 (ENV)

VITALIANO, D.J.

Defendants Redinel Dervishaj and Denis Nikolla stand charged in a superseding indictment with multiple counts of conspiring to and attempting to extort night clubs and other establishments, and with using, carrying, and possessing firearms in connection with those crimes. (Indictment, ECF No. 144).[1] After briefing and oral argument, on March 3, 2016, the Court denied defendants' motion to dismiss the three counts charging the firearms violations brought under 18 U.S.C. § 924(c). The defense challenge rested on the grounds that, in line with *Johnson v. United States*, 135 S. Ct. 2551, 2558, 192 L. Ed. 2d 569 (2015), the statute underlying those counts is unconstitutionally vague. (Def. Mot., ECF No. 137; *see* Jan. 28, 2016 Minute Entry, ECF).[2] Now, supplementing those that accompanied issuance of the bench order, the reasons and analysis supporting denial of the motion follow.

---

[1] The relevant facts have been discussed in prior decisions. *See United States v. Dervishaj*, No. 13-CR-668 (ENV) (E.D.N.Y. Mar. 19, 2015) (ECF No. 81); *United States v. Dervishaj*, No. 13-CR-668 (ENV), 2015 WL 3794803 (E.D.N.Y. June 14, 2015). Familiarity of the parties with those facts is presumed, and they will not be needlessly repeated here.

[2] As described in the motion, defendants sought dismissal of counts Three, Six, and Nine of the second superseding indictment. After this motion was fully briefed, the government filed its third superseding indictment, which added three counts of threatening physical violence in furtherance of a plan to extort, in violation of 18 U.S.C. § 1951(a). (Indictment, ECF No. 144). The § 924(c) firearms charges, re-numbered as counts Four, Eight, and Twelve, are now based not only on attempted extortion and conspiracy to commit extortion, but also on extortionate threat. The parties agree that the claimed constitutional infirmity on the firearms charge is not

1



## Discussion

Under 18 U.S.C. § 924(c), it is a crime to use or carry a firearm in furtherance of, *inter alia*, a "crime of violence," which is defined as a felony that

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The principal goal of § 924(c) is to "persuad[e] a criminal 'to leave his gun at home.'" *Muscarello v. United States*, 524 U.S. 125, 132, 118 S. Ct. 1911, 1916, 141 L. Ed. 2d 111 (1998) ("[T]he provision's chief legislative sponsor has said that the provision seeks 'to persuade the man who is tempted to commit a Federal felony to leave his gun at home.'" (quoting 114 Cong.Rec. 22231 (1968) (Rep. Poff))).

To determine whether another criminal act qualifies as a predicate "crime of violence" under § 924(c), courts employ a "categorical approach" which considers "the intrinsic nature of the [charged predicate] offense rather than [] the circumstances of a particular crime." *United States v. Ivezaj*, 568 F.3d 88, 95 (2d Cir. 2009) (quoting *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006)). In other contexts, the Second Circuit has explained that the categorical approach considers "the conduct encompassed by the elements of the offense, in the ordinary case," and does not require that "every conceivable factual offense covered by a statute" present a substantial risk. *United States v. Van Mead*, 773 F.3d 429, 432 (2d Cir. 2014) (quoting *James v. United States*, 550 U.S. 192, 208, 127 S. Ct. 1586, 1597, 167 L. Ed. 2d 532 (2007), *overruled by Johnson*, 135 S. Ct. 2551) (discussing the categorical approach in relation to a "crime of

---

present with respect to the added substantive counts. That fact, though, does not eliminate the alleged infirmity on the firearms charges with respect to the original substantive counts. Once poisoned, the well remains poisoned.

violence" under U.S.S.G. 4B1.2(a)); *see James*, 550 U.S. at 208 ("[O]ne could imagine an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments. . . . [T]he risk of physical injury to another approaches zero. But that does not mean that the offense[] of . . . extortion [is] categorically nonviolent.).

In this case, the government does not contend that the predicate acts of conspiracy to and attempt to commit Hobbs Act extortion are, by their nature, crimes of violence within the meaning of subsection (A) of the firearms statute, which is commonly referred to as the force clause. The debate here is whether the alleged predicate crimes satisfy subsection (B), the statute's residual clause. (Gov't Mem. 2, ECF No. 141; Def. Reply Mem. 1, ECF No. 143).[3] Indeed, at that, the debate is more refined. Defendants do not contest that, prior to *Johnson*, the predicate acts alleged in the superseding indictment would have unreservedly qualified as crimes of violence under the residual clause.[4] For defendants, *Johnson* is the watershed moment. It is, principally, *Johnson*'s reasoning as to 18 U.S.C. § 924(e)(2)(B) that spawns this motion and their request that the reasoning be extended to invalidate the residual clause of § 924(c)(3).

---

[3] For this reason, the Court will not address defendants' additional argument that these predicate crimes do not satisfy the force clause. (Def. Mem. 13-17).

[4] *Acosta*, 470 F.3d at 136 (18 U.S.C. § 241, which prohibits conspiracies to "injure, oppress, threaten, or intimidate any person" in connection with the exercise of civil rights, constituted a "crime of violence"; "[s]ince applying physical force is perhaps the most obvious way to injure, threaten, or intimidate, a conspiracy to engage in such conduct is, by its nature, a conspiracy that involves a 'substantial risk that physical force' will be used" (quoting 18 U.S.C. § 924(c)(3)(B))); *see Ivezaj*, 568 F.3d at 96 (where the underlying predicate acts to a racketeering charge "allegedly involved the use of violent means, including loansharking and violent acts of extortion," the conduct "unquestionably . . . posed 'substantial risk that physical force against the person or property of another'" would be used during the racketeering scheme (quoting 18 U.S.C. § 924(c)(3)(B))); *United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002) (concerning a RICO conspiracy violent extortion by members of the Gambino crime family, 18 U.S.C. 1951(b)(2), as a "'crime of violence' as that term is defined by the [Bail Reform Act, 18 U.S.C. § 3156(a)(4)]," which has nearly identical language to § 924(c)(3).).

3

A.   The *Johnson* Ruling

In *Johnson*, the Supreme Court considered a provision of the Armed Career Criminal Act ("ACCA") that creates a sentencing enhancement for possessing a firearm in the commission of a federal felony when the defendant already has three prior convictions for violent felonies and/or serious drug offenses. 18 U.S.C. § 924(e)(1); *see id.* § 922(g). ACCA defines a "violent felony" as a crime punishable "by imprisonment for a term exceeding one year," that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

The "residual clause" of ACCA, that is, the final phrase of subsection (ii), which criminalizes acts or omissions that "otherwise involves conduct that presents a serious potential risk of physical injury to another," had been considered by the Supreme Court in a series of decisions prior to *Johnson*: *James*, *Begay*, *Chambers,* and *Sykes*.[5] The concurring and dissenting opinions these cases spawned laid bare serious concerns about the clarity and constitutionality of ACCA's residual clause.[6] At the fore was the question of vagueness, which will invalidate a

---

[5] Two of these decisions were expressly overruled by *Johnson*. *James*, 550 U.S. 192; *Sykes v. United States*, 564 U.S. 1, 131 S. Ct. 2267, 180 L. Ed. 2d 60 (2011), *overruled by Johnson*, 135 S. Ct. 2551. The remaining two decisions were overruled by implication in *Johnson*. *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581, 170 L. Ed. 2d 490 (2008), *overruled by implication by Johnson*, 135 S. Ct. 2551; *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687, 172 L. Ed. 2d 484 (2009), *overruled by implication by Johnson*, 135 S. Ct. 2551. Included in these groups of cases are decisions holding that, for purposes of ACCA's residual clause, a Florida attempted burglary statute described a violent felony, *James*, 550 U.S. at 212, a New Mexico driving under the influence statute did not qualify, *Begay*, 553 U.S. at 148, an Illinois statute concerning the failure to report for penal confinement did not qualify, *Chambers*, 555 U.S. at 130, and an Indiana vehicle flight statute described a violent felony, *Sykes*, 131 S. Ct. at 2277.

[6] For example, the late Mr. Justice Scalia, who would go on to write the majority opinion in *Johnson*, dissented in *James*, pressing that the Court needed either to devise a more coherent

4

criminal statute where the degree of vagueness found compels the further finding that the statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 1845, 170 L. Ed. 2d 650 (2008).

On the fifth Supreme Court go round over the constitutionality of ACCA's residual clause, the towel was finally tossed into the ring. *Johnson* found the provision void for vagueness, which it pegged to a combination of "[t]wo features" that "may be tolerable in isolation," but were impermissible in tandem. *Johnson*, 135 S. Ct. at 2557, 2560. First, by relying on a categorical approach, rather than criminalizing certain acts or elements of conduct, "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime." *Id.* Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony," because it applies "an imprecise 'serious potential risk' standard" to a "judge-imagined abstraction," rather than to the facts of the presented case. *Id.* at 2558. Furthermore, courts were required to interpret this standard "in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives," which

---

method of interpreting the statute, or recognize it "for the drafting failure it is" and find it void for vagueness. *James*, 550 U.S. at 230 (Scalia, J., dissenting) (Justice Ginsburg and Stevens joined in the dissent). In search of a solution, Justice Scalia offered the proposition "that a crime may qualify under ACCA's violent felony residual provision only if it poses at least as much risk of physical injury to another as the least risky of the enumerated crimes," which he determined to be burglary. *Id.* at 225. Of course, this test was not adopted. Subsequent dissents and concurrences continued to deride ACCA's lack of clarity. *See Begay*, 553 U.S. at 150 (Scalia, J., concurring) (disparaging the Court's "regrettable continuation of a piecemeal, suspenseful, Scrabble-like approach to the interpretation of this statute"); *Chambers*, 555 U.S. at 133 (Alito, J., concurring) ("ACCA's residual clause is nearly impossible to apply consistently"; Justice Thomas joined in the concurrence); *Sykes*, 131 S. Ct. at 2278 (Thomas, J., concurring) (the majority opinion "only further muddies ACCA's residual clause."); *id.* at 2284 (Scalia, J., dissenting) ("We should admit that ACCA's residual provision is a drafting failure and declare it void for vagueness."); *see also James*, 550 U.S. at 231 (Thomas, J., dissenting) (finding the provision unconstitutional on other grounds).

5

compounded the imprecision by forcing a comparison to a list of crimes with varying and unclear degrees of risk of physical harm. *Id.* The Supreme Court concluded that, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

To underscore this finding of vagueness, *Johnson* acknowledged the "repeated failures [of the Supreme Court and the lower federal courts] to craft a principled and objective standard" for ACCA's residual clause. *Id.* at 2558-60. The Supreme Court specifically faulted *James*, *Chambers*, and *Sykes* for failing to ever "establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition," and also faulted *Begay*'s "entirely different approach" of requiring the predicate conviction to resemble the enumerated crimes "'in kind as well as in degree of risk posed.'" *Johnson*, 135 S. Ct. at 2558-59 (quoting *Begay*, 553 U.S. at 143).

B.  The Firearms Residual Clause of § 924(c)(3)(B)

*Johnson* was the spark plug for and, defendants contend, controls, their challenge to the similar, but far from identical, language of § 924(c)(3)(B). The crux of the dispute is whether *Johnson* is limited to ACCA's unique text, application, and case law, or should be read broadly to invalidate criminal catch-all residual clauses. The defense position has, no doubt, some facial appeal because there is some commonality of language between ACCA's residual clause and § 924(c)(3)(B), and because both provisions utilize a categorical approach when assessing risk.

These similarities, however, are not enough to foreclose further inquiry. It is an inquiry grounded in the institutional humility that the courts are but a branch of the federal government and, where possible, are required "to construe, not condemn, Congress' enactments." *Skilling v.*

6

*United States*, 561 U.S. 358, 403, 130 S. Ct. 2896, 2928, 177 L. Ed. 2d 619 (2010). "The strong presumptive validity that attaches to an Act of Congress has led [the Supreme] Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Arriaga v. Mukasey*, 521 F.3d 219, 227 (2d Cir. 2008) (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32, 83 S. Ct. 594, 9 L. Ed. 2d 561 (1963)); *see Johnson*, 135 S. Ct. at 2576 (Alito, J., dissenting). Moreover, similar or even identical statutory language does not necessitate uniform interpretation.[7] "Ultimately, context determines meaning." *Darnell Johnson*, 559 U.S. at 139-40; *see Castleman*, 134 S. Ct. at 1410; *see also* A. Scalia & B. Garner, READING LAW 32 (2012) ("Like ambiguity, vagueness can often be clarified by context."). Thus, plainly, whether *Johnson*'s holding is controlling here rests on more than any textual similarities. Also pertinent are the textual dissimilarities and the guidance provided by the interpretative history of its own past application.

The analysis defendants trumpet sets them off on the wrong foot. In clamoring that *Johnson* repudiates the categorical approach to the offense classification, the defense reads the decision way too broadly. (Def. Mem. 6; Def. Reply Mem. 6 n.5). Much to the contrary, *Johnson* recognized that there were "good reasons to adopt the categorical approach [when interpreting ACCA], reasons that apply no less to the residual also clause than to the enumerated crimes." *Johnson*, 135 S. Ct. at 2562. However backhanded the compliment, the Supreme Court

---

[7] For instance, the Supreme Court came to different conclusions about the meaning of "physical force" in the context of ACCA's force clause, 18 U.S.C. § 924(e)(2)(B)(i), and 18 U.S.C. § 922(g)(9), which prohibits the possession of firearms by a person convicted by a misdemeanor crime of domestic violence, as defined by 18 U.S.C. § 921(a)(33)(A). *Compare Johnson v. United States (Darnell Johnson)*, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271, 176 L. Ed. 2d 1 (2010), *with United States v. Castleman*, 134 S. Ct. 1405, 1410 (2014); *see infra* note 10.

7

also expressly declined to "save the residual clause from vagueness" by simply abandoning the categorical approach. *Id.* Presumably, the continued vitality of the categorical approach as a law drafting interpretive tool, supplies substance for the *Johnson* majority's specific discounting of the dissent's concern that *Johnson* might prove "a nuclear explosion" that invalidated "scores of federal and state laws that employ similar standards." *Id.* at 2577 (Alito, J., dissenting); *see id.* at 2561.[8] It is a rebuke not only to the dissent but one that staggers vagueness challenges directed

---

[8] Although *Johnson* clearly does not invalidate the categorical approach, the validity of this judge-made method of statutory analysis as applied to § 924(c)(3)(B) to determine whether the predicate offense "by its nature" qualifies as a crime of violence certainly warrants further consideration. The "good reasons" identified in *Johnson* for applying the categorical approach to ACCA's residual clause included its emphasis on prior convictions (as opposed to conduct that did not result in conviction), and "the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction." *Johnson*, 135 S. Ct. at 2562. Under ACCA, the sentencing court may be called upon to consider decades-old convictions for which there may be very little documentation, and which were premised on a variety of federal and state laws, which may also have changed over time. In the ACCA context, though the categorical approach also "avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries." *Descamps v. United States*, 133 S. Ct. 2276, 2287, 186 L. Ed. 2d 438 (2013). In contrast, the § 924(c) firearms statute does not reference past convictions, so the same practical and constitutional concerns that resulted in the use of a categorical approach in ACCA are not implicated in the similar but identical language of the firearms statute. Recognizing these differences, some courts considering § 924(c)(3) have elected to abandon the categorical approach for pre-trial motions to dismiss an indictment, instead holding that a determination under § 924(c)(3) must be "submitted to a jury properly instructed as to the definition of a crime of violence." *United States v. Monroe*, No. CR 15-74 (MBC), 2016 WL 270316, at *6 (W.D. Pa. Jan. 21, 2016); *see United States v. McDaniels*, No. 15-CR-171 (TSE), 2015 WL 7455539, at *2-4 (E.D. Va. Nov. 23, 2015) ("The phrase 'crime of violence' is an element of § 924(c)—rather than a sentencing factor—"and therefore should be determined by the jury.). These courts are not, however, in the Second Circuit, which, up to now, has repeatedly applied the categorical approach to § 924(c)(3)(B), importing that standard from a Supreme Court decision interpreting 18 U.S.C. § 16(b), which, although it has nearly identical language to § 924(c)(3), is often used in the context of past convictions instead of active prosecutions. *See Acosta*, 470 F.3d at 135 (citing *Leocal v. Ashcroft*, 543 U.S. 1, 7, 125 S. Ct. 377, 381, 160 L. Ed. 2d 271 (2004)); *see Ivezaj*, 568 F.3d at 95; *see generally Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001) (in the context of 18 U.S.C. § 16(b), the phrase "by its nature" "compels" a categorical approach). Thus, the Second Circuit has yet to consider the categorical approach in light of § 924(c)(3)'s procedural posture, notwithstanding certain textual similarities to 18 U.S.C. § 16(b).

at other provisions of law based, simply, on the commonality of language between the challenged provision and the ACCA provision struck down by *Johnson*.

At the same time, the government's suggestion that the categorical approach is limited to a consideration of "offense elements" (Gov't Mem. 18-19), downplays the reality that, when a criminal statute contains a residual clause, the categorical method includes a judicial determination of the "instrinsic nature" of the charged offense. *Ivezaj*, 568 F.3d at 95. As previously noted, this is not a fatal flaw. It is an analysis that is made somewhat easier than in the case of ACCA because of language dissimilarities and because of the temporality that places certain types of trial documents before the court to assist in the determination of under which clause of a divisible statute the defendant stood charge and was convicted.[9] (ACCA's focus on past convictions makes such an inquiry far more difficult if not impossible.) In any event, and much more importantly, the use of a categorical approach is not enough, by itself, to warrant finding § 924(c)(3)(B) unconstitutionally vague—*Johnson* expressly relied on the combination of two problematic features, not one. *Johnson*, 135 S. Ct. at 2557, 2560. If one would have done, it would have rendered the other problematic feature superfluous, which, in turn, would render the self-professed *ratio decidendi* of *Johnson* illogical.

The second feature of the tandem of problematic law drafting techniques that led to the invalidity of ACCA's residual clause centers on the qualitative risk of harm necessary to bring

---

[9] When applying the categorical approach to the predicate criminal offense on which a § 924(c) firearms charge is based, in the case of divisible criminal statutes (such as a burglary statute that includes burglary of buildings and of vehicles), a court may employ the modified categorical approach by considering "the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, ad jury instructions and verdict forms" to determine which portion of the statute applies. *Darnell Johnson*, 130 S. Ct. at 144; *see also Descamps v. United States*, 133 S. Ct. 2276, 2282, 186 L. Ed. 2d 438 (2013) ("[S]entencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.").

the alleged offense conduct within the orbit of the residual clause's proscription. It is here that the dissimilarity of language between ACCA's residual clause and that of § 924(c)(3)(B) is critical. The disparate words result in the qualification of risk in different ways. Under ACCA, the relevant inquiry is a risk of "physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The § 924(c) firearms statute requires courts to consider whether "physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). On this dichotomy of standards, courts have time and again recognized that the risk of physical force is a more narrow inquiry than the risk of physical injury standard. *See Leocal*, 543 U.S. at 10 n.7 (in the context of 18 U.S.C. § 16(b), "substantial risk" "relates to the use of force, not to the possible effect of a person's conduct," and, therefore, the risk of force does not include all offenses with a substantial risk of injury); *Dalton v. Ashcroft*, 257 F.3d 200, 207 (2d Cir. 2001) (comparing 18 U.S.C. § 16(b) and U.S.S.G. § 4B1.2(a)(2), and rejecting an argument that the difference between the two phrases was "negligible," as "[t]here are many crimes that involve a substantial risk of injury but do not involve the use of force"); *see also Jobson v. Ashcroft*, 326 F.3d 367, 372-73 (2d Cir. 2003) ("[T]he risk that a defendant will use physical force in the commission of an offense is materially different from the risk that an offense will result in physical injury.").[10]

---

[10] Additionally, the concept of "physical force" has been thoroughly considered by the Second Circuit and Supreme Court in relation to the use of the same term in 18 U.S.C. § 16(b). *See Santana v. Holder*, 714 F.3d 140, 144 (2d Cir. 2013) (in the context of 18 U.S.C. § 16, "'[f]orce' is defined broadly as 'power, violence, or pressure directed against a person or thing'" (quoting *Dickson v. Ashcroft*, 346 F.3d 44, 50 (2d Cir. 2003))); *see United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 690746, at *2 (S.D.N.Y. Feb. 11, 2016) (applying *Santana*'s definition of "force" to § 924(c)(3)); *see also Leocal*, 543 U.S. at 10-11 (18 U.S.C. § 16(b) "covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense" and "physical force need not actually be applied"); *but see Darnell Johnson*, 559 U.S. at 140 (in the context of ACCA's force clause, "'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person").

Doubtless, especially given its long duration of precedential development, the term "substantial risk" used in the residual clause of the firearms statute offers more clarity than the term "serious potential risk" used in ACCA's residual clause. The word "substantial" qualifies the word "risk." It is a commonly understood and applied concept used to establish a quantum required to meet a legal standard, used here to mean that what is required is not the mere presence of a risk, but the presence of a considerable risk. "Substantial," as defined in Black's Law Dictionary (10th ed. 2014), means, in relevant part, "[i]mportant, essential, and material." *Id.* Certainly, it is a familiar standard applied by courts called upon to quantify "substantial risk" in other contexts. For example, it is a standard that often lies at the core of an Eighth Amendment claim.[11] In this light, "substantial risk" is, to be sure, a more clearly defined quantum than the term "serious potential risk" employed in ACCA. By combining the words "serious," "potential," and "risk," the clause references "the possibility of a possibility—the chance of a chance." *United States v. Gonzalez-Longoria*, No. 15-40041, 2016 WL 537612, at *9 (5th Cir. Feb. 10, 2016) (Higginson, J., dissenting). The Supreme Court underscored the wildly speculative nature of ACCA's language, "potential risk," observing in *James* that it "suggests that Congress intended to encompass possibilities even more contingent or remote than a simple 'risk,' much less a certainty." *James*, 550 U.S. at 207-08. Thus, while ACCA

---

[11] To prevail on an Eighth Amendment claim, a prisoner must demonstrate a "substantial risk of serious harm." *Glossip v. Gross*, 135 S. Ct. 2726, 2737, 192 L. Ed. 2d 761, *reh'g denied*, 136 S. Ct. 20, 192 L. Ed. 2d 990 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 50, 128 S. Ct. 1520, 1531, 170 L. Ed. 2d 420 (2008)). By way of further example, to prove that a sentencing judge refused to depart from sentencing guidelines due to the erroneous belief that he lacked authority for a downward departure, "a defendant must point to 'clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority.'" *United States v. Scott*, 387 F.3d 139, 143 (2d Cir. 2004) (quoting *United States v. Gonzalez*, 281 F.3d 38, 42 (2d Cir. 2002)).

11

confusingly seeks to identify an occurrence that is more "remote than a simple 'risk,'" *id.*, the firearms residual clause in § 924(c)(3)(B) is tied firmly to a familiar "substantial" risk standard.

The firearms residual clause of § 924(c)(3), moreover, contains the explicit temporal qualifying limitation of occurring in "the course of committing the offense." It is a qualification that the Supreme Court found conspicuously and problematically missing in ACCA's residual clause. The *Johnson* majority pointed out that, under ACCA, "a crime may qualify under the residual clause even if the physical injury is remote from the criminal act," and queried, "[b]ut how remote is too remote?" *Johnson*, 135 S. Ct. at 2559. In § 924(c), that question is answered temporally and definitively.

Furthermore, the firearms residual clause lacks the confusing list of enumerated crimes that concerned the *Johnson* court. Instead of offering some guidance, the enumerated crimes in fact helped sow the seeds of confusion, which is reflected in the Supreme Court's struggle to define the proper quantum of risk in proportion to those enumerated crimes. *See James*, 550 U.S. at 203 (the crime at issue should be compared with its closest analog among the enumerated crimes); *id.* at 227 (Scalia, J., dissenting) (the crime at issue should be compared against the enumerated crime that poses the least "risk"); *Begay*, 553 U.S. at 143 (the only crimes covered by the residual clause are those "roughly similar, in kind as well as in degree of risk posed" to the enumerated crimes). Yet, defendants correctly note, of course, that *Johnson* did not hinge on the residual clause's preamble of enumerated crimes. (Def. Reply Mem. 8). But, by no mistake, it was still another factor adding to the confusion underlying its vagueness. *See Johnson*, 135 S. Ct. at 2561 (noting that other factors were "[m]ore important" to the decision, not that the enumeration of crimes was "unimportant").

12

The short of it is that the residual clause in the firearms statute is more specific and more narrow than ACCA's residual clause in three significant respects: its focus on physical force, its heightened substantial risk standard, and its temporal limitation. That these textual differences matter is reflected in the Supreme Court's unanimous decision in *Leocal*, which expressed no doubt about whether two crimes qualified as crimes of violence under 18 U.S.C. § 16(b), a statute that mirrors § 924(c)(3)(B) and, likewise, employs a categorical approach. *Leocal*, 543 U.S. at 10-11.[12] Insightfully, too, the residual clause of ACCA wallowed in muddy waters long before its invalidation in *Johnson*. *See Sykes*, 131 S. Ct. at 2287 (Scalia, J., dissenting) (what "sets ACCA apart" and "confirms its incurable vagueness" is "[our] repeated inability to craft a principled test out of the statutory text"). Reflecting its relative clarity, § 924(c)(3)(B) lacks the history of failed interpretive attempts that weighed in favor of the invalidation of ACCA's residual clause. *See Johnson*, 135 S. Ct. at 2560. Collectively, the text, past case applications, and interpretive history of the firearms provision distinguish it from ACCA, such that it should not be invalidated as a result or in light of *Johnson*.

On a different plane, that *Johnson* issues are under active litigation does not provide guidance. While there are certainly split views on the matter, it is also important to note that a clear majority of courts who have considered it have similarly concluded and held that *Johnson*'s reasoning does not compel the invalidation of § 924(c)(3)(B). The Sixth Circuit, in *United States v. Taylor*, No. 09-5517, 2016 WL 537444 (6th Cir. Feb. 11, 2016), recently recounted the several distinctions between the two statutes. *Id.* at *32; *but see Taylor*, 2016 WL 537444, at *50-53

---

[12] Burglary was the "classic example" of a crime encompassed by that residual clause "because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime," while driving under the influence was not a crime of violence, because the statute "suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses." *Leocal*, 543 U.S. at 10-11.

13

(White, J., dissenting). As noted at oral argument, a court in this district has also distinguished the text of § 924(c)(3)(B), on the basis that it is not preceded by enumerated crimes and does not concern the possibility of injury after the predicate crime has concluded. *United States v. Quashie*, No. 14-CR-376 (BMC), 2016 WL 638052, at *5 (E.D.N.Y. Feb. 17, 2016) (Cogan, J.). Other district courts have similarly declined to find the residual clause of § 924(c)(3) void for vagueness.[13]

However, the Court is not unmindful that the Seventh, Ninth, and Fifth Circuits have considered a section of law, 18 U.S.C. § 16, the general definition of a "crime of violence" in the federal Criminal Code, that the Second Circuit has previously recognized as having "virtually identical language" to the firearms residual clause of § 924(c). *Acosta*, 470 F.3d at 134. Those

---

[13] *See United States v. Green*, No. 15-CR-0526 (RDB), 2016 WL 277982, at *3-5 (D. Md. Jan. 22, 2016); *United States v. Tsarnaev*, No. 13-CR-10200 (GAO), 2016 WL 184389, at *11-14 (D. Mass. Jan. 15, 2016); *United States v. Wright*, No. 14-CR-357 (APG) (VCF), 2015 WL 9958034, at *4 (D. Nev. Dec. 24, 2015), *R. & R. adopted*, No. 14-CR-357 (APG) (VCF), 2016 WL 438957 (D. Nev. Feb. 3, 2016); *United States v. Checora*, No. 14-CR-457 (DAK), 2015 WL 9305672, at *8-9 (D. Utah Dec. 21, 2015); *Cooper v. Krueger*, No. 15-CV-1425 (JBM), 2015 WL 8215348, at *3 (C.D. Ill. Dec. 8, 2015); *United States v. Prickett*, No. 14-CR-30018 (PKH), 2015 WL 5884904, at *1-3 (W.D. Ark. Oct. 8, 2015); *United States v. Lusenhop*, No. 14-CR-122 (SSB), 2015 WL 5016514, at *2-3 (S.D. Ohio Aug. 25, 2015); *see also United States v. Fuertes*, 805 F.3d 485, 499 n.5, 501 (4th Cir. 2015) (the district court erred by instructing the jury that sex trafficking was categorically a § 924(c)(3)(B) crime of violence; declining to determine if *Johnson* invalidated that clause, but noting differences in the statutory texts); *United States v. Walker*, No. 15-CR-49 (MHL), 2016 WL 153088, at *8 (E.D. Va. Jan. 12, 2016) (stating, in *dicta*, that *Johnson* did not invalidate § 924(c)(3)(B)); *United States v. Davis*, No. 15-cr-20564 (NGE), 2015 WL 8311538, at *1 n.1 (E.D. Mich. Dec. 9, 2015) (same); *United States v. McDaniels*, No. 15-CR-171 (TSE), 2015 WL 7455539, at *6 (E.D. Va. Nov. 23, 2015) (same); *United States v. Hunter*, No. 12-CR-124 (RAJ), 2015 WL 6443084, at *2 (E.D. Va. Oct. 23, 2015) (same); *but see United States v. Thongsouk Theng Lattanaphom*, No. 99-CR-00433 (WBS), 2016 WL 393545, at *3-6 (E.D. Cal. Feb. 2, 2016) (finding § 924(c)(3)(B) unconstitutional following the Ninth Circuit's decision invalidating 18 U.S.C. § 16(b) in *Dimaya v. Lynch*, 803 F.3d 1110 (2015)); *United States v. Bell*, No. 15-CR-00258 (WHO), 2016 WL 344749, at *11-13 (N.D. Cal. Jan. 28, 2016) (same); *United States v. Edmundson*, No. 13-CR-15 (PWG), 2015 WL 9311983, at *2-6 (D. Md. Dec. 23, 2015) (finding 924(c)(3)(B) unconstitutional following *Johnson*).

three courts held that § 16(b)'s residual clause is unconstitutionally vague in light of *Johnson*.[14]

In depth scrutiny, of course, must begin with the precise language of that provision, which defines a "crime of violence" as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

Notwithstanding the similarities of language, other courts have embraced a contrary view. Notable, too, *Vivas-Ceja*, *Dimaya*, and *Gonzalez-Longoria* concerned other removal-related statutes "similar to the ACCA in that [they] look[] to past convictions," whereas "§ 923(c)(3)(B) applies to separate offenses charged in the same case." *Checora*, 2015 WL 9305672, at *8. Furthermore, even in the aftermath of *Johnson*, the Second Circuit, in a summary order, applied the categorical approach to find that sexual abuse of a minor constituted

---

[14] The Seventh Circuit reasoned that "the heart of" *Johnson* was the Supreme Court's concern with the combined effect of the categorical approach and the risk assessment, uncertainties that were present in § 16(b). *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015). The Ninth Circuit likewise reasoned that the enumerated clauses and temporal distinction were not part of "the fundamental reason" *Johnson* invalidated ACCA's residual clause. *Dimaya v. Lynch*, 803 F.3d 1110, 1118-18 (9th Cir. 2015); *but see id. at* 1129 (Callahan, J., dissenting) ("The Supreme Court will be surprised to learn that its opinion in *Johnson* rendered § 16(b) unconstitutionally vague, particularly as its opinion did not even mention *Leocal* and specifically concluded with the statement limiting its potential scope."). Notably, the Ninth Circuit limited this decision to the statute at issue, 8 U.S.C. § 1101(a)(43)(F), which defines an aggravated felony for purposes of subjecting a non-citizen to removal under 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.* at 1120 n.17. The Fifth Circuit held that § 16(b), "although not quite as imprecise as the ACCA's standard," nonetheless was unconstitutionally vague. *United States v. Gonzalez-Longoria*, No. 15-40041, 2016 WL 537612, at *9 (5th Cir. Feb. 10, 2016), *reh'g en banc ordered by* 2016 WL 766980; *but see id.* at *9-12 (Higginson, J., dissenting) ("[W]ith *Leocal* as precedent, we should not get ahead of the Supreme Court, invalidating duly enacted and longstanding legislation by implication.").

15

an aggravated felony "crime of violence" under 18 U.S.C. § 16(b). *MacTaggart v. Lynch*, 621 F. App'x 690, 691 (2d Cir. 2015) (summary order) (concerning judicial review of a removal proceeding). Additionally, a court in this district held squarely that *Johnson* did not invalidate 18 U.S.C. § 16(b) because of, *inter alia*, the "critical distinction" that § 16(b) concerns the risk of physical force, not the more amorphous risk of physical injury. *United States v. Doe*, No. 15-CR-302 (MKB), 2015 WL 7422618, at *10 (E.D.N.Y. Oct. 29, 2015) (Brodie, J.). In any event, for the reasons discussed above, the decisions in *Vivas-Ceja*, *Dimaya*, and *Gonzalez-Longoria* as to § 16(b) are not persuasive that the analysis in *Johnson* renders § 924(c)(3)(B) void for vagueness, even if, though unlikely, they have correctly determined that § 16(b) should be invalidated.

Finally, plucking another string on its bow, the government contends that defendants cannot present a vagueness challenge because the residual clause is not vague as applied to them. (Gov't Mem. 25). Defendants, clearly, do not dispute that, prior to *Johnson*, the relevant predicate acts qualified as crimes of violence under § 924(c)(3)(B). "In the absence of First Amendment concerns, courts generally view vagueness challenges to a statute as applied to the defendant's case." *United States v. Farhane*, 634 F.3d 127, 138 (2d Cir. 2011). Defendants, however, argue that the Court should accept a facial challenge to § 924(c) because *Johnson* permitted such a facial challenge to ACCA due to it being "such a hopelessly indeterminate statute." (Def. Reply Mem. 15-16). *See Johnson*, 135 S. Ct. at 2561 ("[T]he existence of *some* obviously risky crimes [does not] establish[] the residual clause's constitutionality."). The Court need not decide whether *Johnson* is *sui generis* because the statute challenged as vague was a "hopelessly indeterminate" exception, or if it was intended to carve out an exception permitting standing to entertain facial vagueness challenges to other statutes plausibly alleged to be

16

"hopelessly indeterminate," but, assuming *arguendo*, that it has carved out an exception expanding standing and that a challenge to the residual clause of the firearms statute falls within it, defendants have not established that § 924(c)(3)(B) is unconstitutionally vague either on its face or as applied to them.

## Conclusion

For the reasons stated here and at oral argument, defendants' motion to dismiss Counts Four, Eight, and Twelve of the third superseding indictment must be, as the Court has already ordered, denied.

Dated: Brooklyn, New York
March 14, 2016

/s/ USDJ Vitaliano
_____
ERIC N. VITALIANO
United States District Judge